[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR FURTHER FINDING OF ARREARAGES DATED JULY 1, 1992 AND MOTION FOR MODIFICATION OF JUDGMENT DATED MARCH 19, 1990 CT Page 2571
The marriage of the parties was dissolved by the Superior Court on July 11, 1984. There were two minor children issue of the marriage, to wit:
Ari Alexandre Ades, born June 11, 1971
Anu Alexandra Ades, born November 6, 1974
By agreement of the parties, certain orders were entered by the parties. The pertinent orders applicable to the instant proceeding are as follows:
 1.) No alimony, periodic or lump sum is awarded to either party.
 2.) The care, custody and education of said minor children is committed to the defendant subject to the right of reasonable visitation in the plaintiff.
 3.) The plaintiff pay to the defendant for the support of each of said minor children, the principal and interest payments on the existing first mortgage on the premises known as 47 Cedar Hill Road, Easton, Connecticut.
 4.) The plaintiff shall bring current the arrearage due on said first mortgage.
 5.) The plaintiff shall pay the current real estate taxes on said property until it is sold, provided, however, at the time the house is sold, the defendant will be reimbursed from the gross proceeds of sale for any such payments.
 6.) The property at 47 Cedar Hill Road in Easton, Connecticut shall remain in the defendant's sole name, provided, however, upon both children attaining the age of 18 or becoming emancipated, the home shall be sold and one-half of the net proceeds, after paying the present first mortgage, real estate commission, attorney's fees and advances for taxes and homeowners CT Page 2572 insurance, shall be delivered to the plaintiff and defendant as co-trustees for the benefit of the children. The principal proceeds and/or the income therefrom shall be used at any time after the institution of said trust by the plaintiff and defendant, in their sole discretion as co-trustees, exclusively for the support, education and welfare of the parties' children. Any proceeds of said trust remaining on July 1, 2002 shall be distributed by the parties equally to each child.
 7.) The defendant's obligation to deliver one-half of the net proceeds to the parties as co-trustees for the children shall be secured by a mortgage to be executed and recorded by her within one week from the date hereof.
The defendant, under date of February 4, 1991 filed a "Motion for Contempt/Failure to Pay Support/Finding of Arrears" claiming that the plaintiff has not complied with the previous orders of the court regarding mortgage payments and payment of delinquent and current real estate taxes.
The defendant further alleges a tax foreclosure sale took place on Saturday, January 21, 1990 and title will vest in the successful bidder on July 21, 1991 if the sum of $78,985.26 plus interest at eighteen percent is not paid before that date.
The defendant also alleges that by reason of the plaintiff's failure to make mortgage payments, Citytrust Company, trustee has commenced a foreclosure action against the defendant and the Court has ordered said premises sold on February 9, 1991.
On February 27, 1991, this Court (Judge Joseph Flynn) entered the following orders:
 "Court finds motion of contempt for failure to support. $30,818.56 total cost of arrearage on monthly payments plus additional costs. Plaintiff is in contempt of order and decree issued 7-11-84. Court further finds that $750.00 to be awarded for defendant's attorneys fees; $868.03 total monthly CT Page 2573 order by automatic wage execution; in addition a capias issued with $75,000.00 bond. Court further finds that $78,985.26 plus interest of 18% to be paid not later than 7-21-91 or title will vest in the purchaser subject to the existing first mortgage."
The evidence adduced at the instant hearing (10-5-92 and 10-6-92) demonstrated that the arrearage of $30,818.56 was comprised of the following:
 $17,469.76 — Delinquent Mortgage payments; June 88 to Jan. 91 inclusive (32 X $545.93 = $17,469.76)
6,532.00 — Committee fees re foreclosure
2,866.80 — Disbursements re foreclosure
 3,400.00 — Plaintiff (Mortgagee) in foreclosure attorneys fees
 550.00 — Title search and appraisal fees re ----------- foreclosure $30,818.56 -----------
The evidence also demonstrated that the $868.03 monthly payment ordered was $545.93 monthly mortgage payment and $322.10 real estate taxes (1/12 of annual real estate taxes).
At the hearing on October 5, 1992 and October 6, 1992 the plaintiff complained that the findings and orders of this court on February 27, 1991 by Judge Flynn were done in his absence and he was precluded from presenting a defense to the alleged contempt. However, the plaintiff was represented by counsel of record at the February 27, 1991 hearing and there is no evidence before this court indicating that the plaintiff was unable to attend said hearing and further there is no evidence that defendant's counsel requested a continuance. Therefore, the court finds that the plaintiff's said complaint is without legal merit.
The plaintiff filed a motion by way of citation to modify CT Page 2574 dated January 25, 1989 regarding child support. The plaintiff did not pursue this motion.
The plaintiff also filed a motion for modification of judgment, dated March 19, 1990, requesting a change in the custody of Anu Ades. Although this motion is approximately 2 1/2 years old, the plaintiff pressed this motion at the hearing on October 5 and 6, 1992. The plaintiff did not produce sufficient substantive evidence at said hearing pertaining to the custody issue and the best interest of Anu Ades enabling this court to make a reasoned decision. Furthermore, the said Anu Ades attained her majority on November 6, 1974, rendering said motion moot. Therefore, the court declines to act on said motion.
The real thrust of this hearing is based on the defendant's motion for further finding of arrearage. Based on the credible evidence adduced at the hearing, the court finds a further arrearage as follows:
 1.) $17,360.60 represents 20 months from and including March 1991 to and including October 1992 at the rate of $868.03 as ordered by Judge Flynn on 2-27-91. The $868.03 being $545.93 per month for mortgage payments and $322.10 representing 1/12 the annual taxes.
 2.) $99,126.50 representing delinquent taxes as follows: Base figure of $78,985.26 per Judge Flynn's orders plus 17 months at 1 1/2% per month from and including March 1991 to and including July 1992. This court observes without finding that it is not sure this is a correct figure as it may be the amount necessary to redeem from the tax foreclosure successful bidder and further some suggestion that the tax collector in Easton forwarded a check in the amount of $31,000.00 to the trustee in bankruptcy. Subject to such further orders as may be contained in this decision, this court orders a further hearing to determine all aspects of the delinquent real estate taxes, including but not limited to the amount and payment thereof, and how much of delinquency may he included in the arrearage of CT Page 2575 $17,360.60.
 3.) $300.00 representing sheriff fees for capias.
The total arrearage found by this court, Judge John W. Moran, is $116,787.10 subject to considerations regarding real estate taxes. The grand total of arrearage is $147,605.46. The court orders that this sum be paid one-half to defendant by the plaintiff and one-half be paid to fund that trust ordered by the terms of the dissolution of marriage judgment dated July 11, 1984.
The entire responsibility for this tragic financial situation is on the plaintiff's shoulders. Had he complied with the orders of the court, the expectations of the defendant and the parties' children would have come to fruition. The defendant is entitled at law to rely on court orders and expect that the charged party complies with those orders.
The plaintiff herein appears to focus solely on the concept of support, and has elected to carry out his obligations of support as he saw fit in virtual disregard of the court orders. The plaintiff is not entitled to credit for the payments and expenses which he selfishly characterizes as support. It is not support as far as this case is concerned. The concept of support is well defined in this case. It is "plaintiff pay to the defendant for the support of each of said minor children the principal and interest payments on the existing first mortgage on the premises known as 47 Cedar Hill Road, Easton, Connecticut." It is nothing more, nothing less. It is not $75.00 per week, nor is it equated to payments and expenses approximating $75.00 per week. Further, the payment of the mortgage payments is inseverably intertwined to the plan of the parties which will ultimately provide a trust for the support of said children and preserve the only capital asset which the defendant owned. The plaintiff's failure to pay the mortgage payment undermined the plan of the parties and led to its destruction. The plaintiff, being entirely at fault, must now be put to the task of rebuilding that which he destroyed.
By way of further rational, the court invites the parties to assume, without the court finding, that if this home sold for $220,000.00 there would be about $148,000.00 net proceeds as follows: CT Page 2576
Sales Price $220,000.00
 Less Mortgage (November 1, 1992) $55,600.00 Real Estate Commission (6%) 13,200.00 State of Connecticut Tax 1,100.00 Town Tax 240.00 Attorney's fees 1,500.00 Total Deductions ----------- 71,640.00 ----------- Net Proceeds $148,360.00
Based on the foregoing hypothetical, the defendant would end up with about $74,180.00 and the trust's initial corpus would be $74,180.00.
The court does not feel that the plaintiff should be assessed any expenses that the defendant incurred by virtue of her bankruptcy petition. The defendant elected to petition for bankruptcy voluntarily without any reliance or confidence in the foreclosure proceeding. Although the primary reason for the defendant's financial downfall was the plaintiff's failure to pay the mortgage payment, it would be entirely speculative on the part of the court to assume the plaintiff was entirely at fault for all the defendant's financial problems. Further, the court observes that at the time of this hearing, the defendant was unemployed and her bankruptcy petition shows only $5,500.00 in earnings for 1990. In addition, the defendant has benefited from the bankruptcy petition in that her liabilities were discharged.
The finding of this court is that the plaintiff is in arrears in the grand total of $147,605.46, and the court orders the plaintiff to pay the same equally to the defendant and a trust set up for the children.
The court finds that the plaintiff shall pay to the defendant the sum of $3500.00 as a contribution towards her attorneys fees that she has incurred as a result of the plaintiff's default in complying with the orders of this court.
In the event the parties are unable to agree on a method of payment by the plaintiff, the court retains jurisdiction to conduct a hearing and determination thereon upon the motion of CT Page 2577 either party.
JOHN W. MORAN, JUDGE